THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JEFFREY ROBERSON, Defendant-Appellee.

Second District    No. 75-284

Opinion filed March 16, 1977.—Rehearing denied April 15, 1977.

Peter J. Woods, State's Attorney, of Oregon (Joseph A. Spiezer, Assistant State's Attorney, and Edward Morris, Martin P. Moltz, and Christine Drucker, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The State appeals from an order which suppressed evidence and statements.

The State first contends that a search of the defendant's car including the locked trunk (where yarn was found which became the basis of a theft charge against the defendant) was lawful and that therefore the motion to suppress evidence should have been denied.

At the combined hearing on defendant's motions Officer Larry Myroth of the Rochelle Police Department testified that on November 21, 1974, at about 12:20 a.m. he arrived at the Del Monte plant in response to a call from the plant security guard. He stated that the security guard " * * * advised me that he and a number of other employees had seen an individual in the plant * * * " and that the security guard further advised him "that he and a number of other employees had seen an individual in the area by the office. As they approached the front door, the individual ran, employees gave pursuit and caught the individual in back of plant 110 as he was approaching a white '71 Plymouth. The employees brought the individual back to the front part of the building where he was when I arrived. * * *." The officer testified that he asked whether defendant was employed at Del Monte to which the security guard replied that defendant was not an employee. Defendant was then placed under arrest. The officer stated that the defendant was charged with burglary since the warehouse at the time was closed and there were no employees working there.

The officer then ran a license check on the car and found that it was registered to a Patricia Bonnell. The car was under a water tower approximately three-fourths of a block from the plant and not in a parking area. He looked inside the vehicle to determine if there was anybody in it and found that it was not occupied. He called an officer to stand by the vehicle and then called for a tow truck. The officer returned to the station, took the car keys which were in defendant's personal belongings, went back to the car, and found that one of the keys fit the ignition. The officer stated that he then had the car towed in to a private garage "for the protection of the property and for the departmental policy of inventorying * * *." In the course of the "inventory" at the garage the officer went into the trunk and found a rifle and two sealed

cardboard boxes which he opened, and found that they contained yarn. The officer stated that the inventory was made pursuant to departmental regulations which authorized a complete inventory, including the trunk.

On November 21, 1974, another officer entered Patricia Bonnell's house where defendant had been living. Patricia Bonnell consented to a search in which the officer found additional boxes of yarn. Patricia Bonnell told the officer that defendant had brought the yarn home.

The defendant was indicted for the offense of theft over $150 based on the value of 180 skeins of yarn allegedly taken from a firm identified as Caron International, Incorporated.

The State argues that the search of the trunk was reasonable either on the basis of probable cause or as a search incident to a lawful arrest.[1] Defendant does not question his arrest but contends that the search may not be viewed as incident to the arrest since the defendant was not near the car when placed under arrest and, in fact, the police did not know who the car belonged to at the time of the arrest. He argues that the police did not know it had been in defendant's custody until later when the keys were taken from defendant while he was in the police station.

■■ We agree with the contention of the defendant that the search of the trunk of the car which took place some time after the arrest and at a time defendant was in the police station cannot be justified as a search incident to an arrest. See *Preston v. United States*, 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881, 883-84 (1964). See also *Cardwell v. Lewis*, 417 U.S. 583, 41 L. Ed. 2d 325, 94 S. Ct. 2464, 2470 (1974).

However, a warrantless search of an automobile may be based upon probable cause to believe that the car contains articles that the officers are entitled to seize.

The trial court in a memorandum opinion considered only the People's attempt to justify the seizure of the yarn on the grounds that it was obtained as the result of an inventory of defendant's property. As we have stated we agree with the trial court's opinion that the search may not be justified as an inventory search under the facts of this case. In the context of that single issue the trial court in the memorandum opinion stated the facts in general terms, that the police "were advised by a company security guard, that they had seen a person running by the warehouse

---

[1] The main thrust of the officer's testimony at the hearing on the motion to suppress was that the search of the trunk was pursuant to inventory regulations of the department. The State argued to the trial court that one basis of justifying the search would be the inventory, but it also argued that the officer had probable cause to seize the vehicle and to make a complete search of it at the scene and that he had the same right 45 minutes later. The State has abandoned the justification for the search on the basis of an inventory on this appeal and we think rightly so on the particular facts. See *South Dakota v. Opperman* 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, 3102 (1976) (Powell, J., concurring). And *c.f. People v. Clark*, 65 Ill. 2d 169 (1976).

buildings." While the specific findings of fact which would show the circumstances upon which the officer could rely in the search were not material to the court's resolution of the issue as a matter of inventory search, they do become important if the matter is to be resolved as a question of probable cause.

■■ From the record it appears that the officers were advised by the company security guard not merely that he and other employees had seen a person "running by" the warehouse buildings but more specifically that they "had seen an individual in the plant." This was later more particularized by the statement that the security guard told the police officer that he and a number of other employees had seen an individual "in the area by the office." It therefore becomes apparent from the record that the police officer had reasonable cause to believe that the defendant who was not an employee, was seen in a closed part of the plant after midnight, in the area by the office; that he ran when security employees approached the front door of the building; that he was running towards a white 1971 car parked some distance in the rear of the building; and, that prior to approaching the vehicle the officer knew that the car was not registered to the defendant. Thus, the officer had probable cause to search the vehicle at the scene either on the belief, which would be entirely reasonable under the circumstances, that the car contained burglary tools, the fruits of the burglary, or was itself stolen. See *People v. Powell*, 9 Ill. App. 3d 54, 57-58 (1972); *People v. Davisson*, 35 Ill. App. 3d 887, 90-91 (1976).

It follows that if the search could have been made without a warrant at the scene of the crime based upon probable cause, the probable cause still existed at the place where the car was taken for safekeeping at the direction of the police. See *Texas v. White*, 423 U.S. 67, 46 L. Ed. 2d 209, 96 S. Ct. 304, 305 (1975); *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, 1981 (1970); *People v. Joyner*, 50 Ill. 2d 302, 311-12 (1972).

■■ Since the search and seizure of the car and its contents were reasonable in our view it would follow that the warrantless search of the apartment with the consent of Patricia Bonnell who lived there with defendant was also based upon reasonable cause. The trial court therefore erred in suppressing the evidence seized in the car and in the apartment.

The trial court suppressed defendant's statements, without comment in its memorandum opinion, apparently on the basis that the statements were the product of an illegal search. In view of our ruling on the motion to suppress evidence we next consider the motion to suppress defendant's statements in light of the record.

There was testimony for the State that defendant posted bond and later

in the morning went to the garage to pick up the white Plymouth. Officer Haggestad was present and asked defendant if he knew the yarn was in the trunk and the defendant said that he did. The officer then advised defendant he was under arrest for theft. Haggestad testified that he read the *Miranda* warnings to defendant from the card which he carried with him and that defendant said that he understood his rights and wanted to talk to the officer. Haggestad testified that he told defendant that they would go to the police station to talk further. At the station the officer said that he first talked to defendant about matters unrelated to this offense for approximately an hour. At about 12:26 a.m. he testified that he again read the *Miranda* warnings to defendant before beginning interrogation on the present offense. The officer testified that defendant said he understood but was willing to talk. Defendant then said that he had not stolen the yarn but knew that it was stolen and had purchased it at $1 per box. Defendant then wrote out and signed a statement to that effect.

Haggestad's testimony was corroborated by officer Melvin Messer in all essential details both as to the circumstances of the statement at the garage and at the police station. On cross-examination officer Messer stated that he did not hear the *Miranda* warnings given at the station but had heard defendant say he understood his rights and had seen defendant with the card on which the *Miranda* warnings were printed in front of him when he was writing out his statement.

Defendant testified that officer Haggestad was alone with him at the car in the garage, that he was not advised of his *Miranda* rights, and that the first time he was given his *Miranda* warnings was at 12:26 at the police station. He said he had given the information that he knew the yarn was stolen and had bought it before the warnings were read to him. He admitted that it was a voluntary statement without threats or coercion.

The State argues that the answer to Officer Haggestad's question whether defendant knew the yarn was in the trunk was a volunteered response at the garage; that defendant was under no compulsion to give the statement as to the circumstances of acquiring the yarn which he gave at the station after being admonished of his rights, and that therefore the order suppressing his statements was against the manifest weight of the evidence.

The defendant essentially argues that the statements were the fruits of an illegal search and were therefore properly suppressed. We have held, however, that the search was authorized and therefore will consider whether the statements should have been suppressed for any other reason.

■■ Defendant's oral statement at the garage was admissible even though defendant had not been advised of his *Miranda* rights for the reason that he was not in custody at the time of the admission.

■■ There is no question that defendant voluntarily arrived at the garage and that his freedom to depart was not restricted in any way at that time. As recently stated by the United States Supreme Court:

> "[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' " *Oregon v. Mathiason,* ___ U.S. ___, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 714 (1977).

The oral statement made at the police station would seem to require a different result because the State's witnesses testified that defendant was in custody at that time. However, assuming that the defendant was in custody and assuming that he had not received proper *Miranda* warnings, such facts would not require suppression of the subsequent written statement which the record manifestly shows was made after *Miranda* warnings were given to the defendant and made without threats or coercion by the police.

■■. The voluntariness of a statement or confession is to be determined from the totality of the circumstances. (*People v. Prim,* 53 Ill. 2d 62, 70 (1972).) The fact that an earlier statement is inadmissible for failure to accord proper warnings does not necessarily make the subsequent statement which has been voluntarily reduced to writing after proper warnings have been given inadmissible. (*People v. Andrus,* 37 Ill. App. 3d 533, 535 (1976); *People v. Willis,* 26 Ill. App. 3d 518, 527 (1975).) If a subsequent statement is given after proper warnings and under circumstances assuring its voluntariness where the defendant has not requested that questioning be cut off (*People v. Washington,* 41 Ill. App. 3d 475 (1976); *cf. People v. Eason,* 44 Ill App. 3d 308 (1976)), and particularly where no evidence is adduced to show that the second statement is the product of the first, the later statement is admissible. See *People v. Burris,* 49 Ill. 2d 98, 104 (1971); *People v. Andrus,* 37 Ill. App. 3d 533, 535; and *People v. Landgham,* 122 Ill. App. 2d 9, 20 (1970) *cert. denied* 402 U.S. 911, 28 L. Ed. 2d 652, 91 S. Ct. 1389; *cf. People v. White,* 61 Ill. 2d 288, 296 (1975); compare *People v. Raddatz,* 91 Ill. App. 2d 425, 434 (1968).

■■ On the totality of the record before us we are convinced that the written statement of the defendant given after proper warnings and with no request that the police cease interrogation was voluntary and uncoerced and was not shown to be a product of an earlier oral statement under any reasonable view of the evidence. The statements therefore should not have been suppressed.

The order suppressing evidence and statements is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.

RECHENMACHER, P. J., and GUILD, J., concur.