**Eugene MOATS, individually and as President and Representative of Local 25, Service Employees International Union; Vivian Crawford, and Cindy Young, Plaintiffs,**

v.

**The VILLAGE OF SCHAUMBURG, Herbert Aigner, individually and as President of the Village of Schaumburg; Robert Hammond, individually and as Chief of Police of the Village of Schaumburg; J. Henry, individually and as Police Officer of the Village of Schaumburg; Jan Bierman, individually and as Prosecuting Attorney of the Village of Schaumburg; J. Emil Anderson & Son, Inc., a corporation; Donald Shepson; and W. John Boyd, Defendants.**

No. 82 C 1103.

United States District Court,
N.D. Illinois, E.D.

March 14, 1983.

**626**

Marvin Gittler, Edwin H. Benn, John W. Fisk, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., Chicago, Ill., for plaintiffs.

Bettye S. Kitch, John S. Schauer, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Judge, Kurnik & Knight, Park Ridge, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiffs in this action are Eugene Moats ("Moats"), individually and as a representative of Local 25, Service Employees International Union ("Union"), and two members of the Union, Vivian Crawford ("Crawford") and Cindy Ann Young ("Young"). The "public defendants" [1] include the Village of Schaumburg ("Village"), a municipality located in Cook County, Illinois; Herbert Aigner ("Aigner"), President of the Village; Robert Hammond ("Hammond"), chief of the Village police; and Joseph Henry ("Henry"), a Village police officer.[2] In Counts III and IV, Young and Crawford allege that Henry falsely arrested them and used excessive force to effect Crawford's arrest. They also claim that the Village, Aigner and Hammond negligently or intentionally trained and supervised Henry in arrest procedures and failed to discipline Henry for his alleged use of unlawful practices. Finally, the plaintiffs in Counts III and IV charge a conspiracy among the public defendants to deprive them of their constitutional and statutory rights in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §§ 1983 and 1985(3). Jurisdiction is asserted thereto and under 28 U.S.C. § 1331. Money and punitive damages are sought.[3]

1. Counts I and II of the complaint name as "private defendants" J. Emil Anderson & Son, Inc., the corporate manager of the building in and around which the incident complained of occurred, and Donald Shepson and W. John Boyd, agents of J. Emil Anderson. Pursuant to a settlement agreement, Count II against the private defendants was dismissed. Count I merely identifies the various plaintiffs and defendants in this action, and is not a substantive count.

2. Additionally, Jan Bierman, a prosecuting attorney for the Village, was named a public defendant. As Ms. Bierman is not responsible for the selection, training or supervision of the Village police force, the plaintiffs agree that summary judgment in her favor is appropriate.

3. A prayer for injunctive relief has been withdrawn, as the plaintiffs are satisfied that the public defendants will not hamper the lawful dissemination of Union information in reprisal for filing this complaint.

Presently before the Court is a motion by the public defendants to dismiss the complaint or, in the alternative, for summary judgment. For the reasons stated below, summary judgment is granted to each public defendant on the false arrest and excessive force claims and the section 1985(3) claim is dismissed.

## FACTS

On February 4, 1982, Crawford and Young parked their car in a lot adjacent to the 1000 Plaza Drive Building in Schaumburg, Illinois. The building is managed by J. Emil Anderson & Son, Inc., through its agents, W. John Boyd ("Boyd") and Donald Shepson ("Shepson"). It is undisputed that Crawford and Young then distributed leaflets on behalf of the Union. The site of the distribution is contested, however. Crawford and Young now claim that they passed Union literature to motorists on a public street. To the contrary, Boyd says that leafletting occurred on private property under his control. In fact, Boyd reported the alleged incident to the Schaumburg Police, which relayed the complaint to Henry in his patrol car. The dispatcher's message allegedly recited: that a labor dispute was in progress at 1000 Plaza Drive; that the building's manager would sign a complaint for criminal trespass; that on other occasions the Union had been asked to leave the premises; and that two women in a red and white car were the subjects of the instant complaint.

Arriving at the parking lot, Henry spotted the red and white car. He found Crawford and Young inside and questioned them. Crawford admits in her affidavit[4] that she lied to Henry by denying any Union activity that day, either on private or public property. Instead Crawford told Henry that she was on the premises to wait for her daughter-in-law and grandson. After talking to Crawford, Henry talked to Boyd, who had

come onto the parking lot with Shepson. Boyd expanded the story which had been given to Henry by radio dispatch: that the building had been having labor problems; that Union members had been on the property before, occasionally going inside and annoying people and partially obstructing doorways; that Union members had been warned that if they continued to come onto the premises, a trespass complaint would be filed; that Crawford and Young had passed out leaflets on the building's property that day; and that Boyd would sign a complaint for the arrest of Crawford and Young.

Crawford says that after Henry talked to Boyd, Henry accused her of lying. It is unclear whether Crawford actually admitted her lie to Henry on February 4, 1982, i.e., that she had been passing out Union literature. Although Crawford now admits to leafletting on a public thoroughfare, she neither admits nor denies Boyd's allegation that she had been leafletting on private property. Rather, the focus of Crawford's affidavit in opposition to summary judgment is her assertion that at no time was she warned orally or in writing that entry onto the parking lot was prohibited. She also says that she was not given an opportunity to leave the lot after it became apparent that her presence was unwelcome. Nor, she says, did Henry even ask her if she had been so warned.[5]

Henry arrested Crawford and Young without an arrest warrant. He professes to a good faith belief that probable cause to arrest them for trespass existed. Henry handcuffed Crawford and Young and took them to the Village police station. Boyd came to the station and signed the complaint. Crawford says that the cuffs were unnecessary since she did not resist arrest, and that they were used to humiliate her and Young. She also says that Henry roughly twisted and pulled her arm behind

**4.** Young did not submit an affidavit.

**5.** It is unclear from the record whether Boyd claims that Crawford and Young were inside the building for Union purposes on February 4, 1982, or whether Boyd's charge of Union activity on private property encompasses their al-

leged acts only on the parking lot. It also is unclear whether Boyd alleges that Crawford or Young were the same Union members who had entered onto the property before February 4, 1982.

her. Henry has not specifically responded to Crawford's allegation of excessive force, except to say that in arresting the plaintiffs he "acted without malice, spite or ill will."

Crawford and Young were charged, held for about two hours and released. Subsequently the case against them was dismissed.

## DISCUSSION

### A. *False Arrest*

Crawford and Young claim to be victims of false arrest because they think that it was unreasonable for Henry to believe that they had committed a trespass. In Illinois, the crime of trespass has two prongs: (1) entering or remaining on another's land and (2) notice to depart. Ill.Rev. Stat. ch. 38, § 21–3(a) (1982). *See also People v. Gregorich,* 71 Ill.App.3d 255, 27 Ill. Dec. 555, 389 N.E.2d 619 (5th Dist.1979). In order to establish a criminal trespass, actual notice of prohibited entry must be given. *See, e.g., People v. Ulatowski,* 54 Ill.App.3d 893, 10 Ill.Dec. 688, 368 N.E.2d 174, 177 (4th Dist.1977). Where, as here, an arrest is warrantless, the arrest is justified only if, based on the totality of the circumstances, the arresting officer had a reasonable basis for believing that a crime had been committed or was in progress. *See also People v. Walls,* Ill.Rev.Stat. ch. 38 § 107–2(c) (1982); 87 Ill.App.3d 256, 42 Ill.Dec. 347, 408 N.E.2d 1056 (1st Dist.1980).

It is Crawford's and Young's position that, since they allegedly had no notice of prohibited entry or a reasonable chance to depart the premises, no trespass occurred. This Court, however, is not asked to decide whether the State of Illinois can successfully prosecute Crawford and Young for criminal trespass or whether there was probable cause to sustain a warrantless arrest. Rather, the issue here is whether Henry, in arresting Crawford and Young, violated 42 U.S.C. § 1983.

Section 1983, in pertinent part provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or caus-

es to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

The test for liability under section 1983 is whether a police officer acts in good faith and with reasonable belief that his conduct is lawful. If he does, his acts are immune from liability. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Seventh Circuit, in *Brubaker v. King,* 505 F.2d 534, 536–37 (7th Cir.1974), has observed that the test

> under § 1983 is not whether the arrest was constitutional or unconstitutional or whether it was made with or without probable cause, but whether the officer believed in good faith that the arrest was made with probable cause and whether the belief was reasonable.

*See also Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Lenard v. Argento, et al.,* 699 F.2d 874 (7th Cir.1983). Thus, the qualified immunity from section 1983 liability is tested by objective and subjective means and is a less exacting standard than is required to prosecute a criminal or to sustain his arrest.

Henry's affidavit avers, in effect, that he acted in good faith, without "spite, malice or hatred" when he arrested Crawford and Young for trespass. That document recites, *inter alia,* that: Boyd twice (once to the dispatcher and once to Henry) claimed that Union members had, on more than one occasion, come onto private property within his control; Boyd claimed to have threatened Union "trespassers" with arrest if they reentered the property; and Henry found Crawford and Young on the property.

It also is significant that Crawford admits to lying about why she was on the lot. Crawford's theory is that it was unreasonable for Henry to have believed that probable cause to arrest her existed since he allegedly never determined if she was warned about entering the property or given the chance to leave it. However, even if Henry did not ask whether notice to Craw-

ford and Young was given or a chance to depart made, such inquiry might have been futile. It is unlikely that Crawford, if asked, would have admitted receipt of a notice to vacate the property in light of the fact that she lied to Henry about her Union activity and why she was on the property.

The Court finds from the evidence that it was reasonable for Henry to have believed that probable cause to arrest Crawford and Young for trespass existed. The Court also credits Henry's assertion that his belief was held in good faith. Of course, if Henry actually learned of Crawford's lie just prior to her arrest, the reasonableness of his good faith belief is enhanced.

■ Henry seeks summary judgment on the false arrest claim. Summary judgment will not be granted where a material fact is genuinely disputed. Fed.R.Civ.P. 56. Furthermore, summary judgment generally is inappropriate where a disputed issue of material fact is one of subjective intent or good faith. *See, e.g., Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Askew v. Bloemker,* 548 F.2d 673 (7th Cir. 1976). Here the parties differ over whether Henry's decision to arrest Crawford and Young was made in good faith and was reasonable. Nonetheless, summary judgment is appropriately granted in Henry's favor.

The Supreme Court has ruled that in the proper case summary judgment is appropriate for a police officer who is charged under section 1983, although subjective good faith is at the heart of the qualified immunity defense. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The conditions are: If a reasonably held, good faith belief in the lawfulness of an action is shown *and* the officer did not know that his actions would violate the plaintiff's constitutional rights or the officer did not otherwise behave maliciously. *Id.* at 322, 95 S.Ct. at 1000. *See also Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Pierson v. Ray, supra,* 386 U.S. at 557, 87 S.Ct. at 1219; *Eberle v. Baumfalk,* 524 F.Supp. 515, 516 (N.D.Ill.1981); *Brubaker v. King, supra,* at 538–39.

This is a proper case. Henry in good faith, reasonably believed that there was probable cause to arrest Crawford and Young for trespass. Indeed, they were on private property, although not leafletting, when Henry arrived. Henry was twice assured that the owners of the property would sign a complaint for trespass against Crawford and Young. It is irrelevant that Crawford and Young may not have been given actual notice of their alleged wrongful entry or an opportunity to depart. Furthermore, there is no evidence that Henry, despite his reasonable good faith belief, acted maliciously or with knowledge that his actions might violate the plaintiffs' rights. Summary judgment is granted in favor of Henry on the issue of false arrest.

### B. *Excessive Force*

Crawford also complains that Henry used excessive force to effect her arrest. She states that although she offered no resistance, "Officer Henry roughly twisted my arm behind my back, and pulled it up for no apparent reason."

■ A police officer is never justified in effecting an arrest by use of excessive force. In order to keep within the confines of the Eighth and Fourteenth Amendments, only force reasonable under the circumstances is proper. Theoretically no force may be expended if an arrestee quietly submits to arrest. *See, e.g., Black v. Stephens,* 662 F.2d 181 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Feemster v. Dehntjer,* 661 F.2d 87 (8th Cir.1981).

■ Behavior that might constitute a tort under state law is not necessarily compensable under section 1983, however. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 409, 91 S.Ct. 1999, 2011, 29 L.Ed.2d 619 (1971) (Harlan, J. concurring). As Judge Friendly observed in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), "[n]ot every push or shove, even if it may later seem unnecessary in the peace of

a judge's chambers, violates a prisoner's constitutional rights." The test for imposing liability is whether the officer's conduct "shocks the conscience." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); *Rhodes v. Robinson,* 612 F.2d 766, 772 (3d Cir.1979).

■ Even if Crawford proved at trial that Henry roughly twisted her arm and that she did not resist arrest, her claim does not rise to the level of a constitutional violation. Crawford does not claim to have consulted a doctor for treatment of her alleged injuries. No proof of permanent or serious physical injury has been suggested. Certainly the Court disapproves any unnecessary use of force by police officers. However, the alleged arm-twisting is not behavior that would shock the conscience of a reasonable person. Thus, no genuine issue of a material fact remains to try. Henry's motion for summary judgment is granted in his favor and against Crawford on her excessive force claim.

### C. *Failure to Train, Instruct, Control, Supervise or Discipline*

■ Crawford and Young allege that the Village, its president Aigner and police chief Hammond negligently and intentionally failed to train, instruct, supervise, control or discipline Henry, in violation of section 1983. They cite the purported failures as examples of a custom, policy or practice which, if promulgated or acquiesced in by the Village and Henry's superiors, would trigger liability under *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court need not test the merits of that argu-

ment[6] since Henry has not violated any constitutional or federal statutory rights of Crawford and Young. In *Spriggs v. City of Chicago,* 523 F.Supp. 138, 141 (N.D.Ill.1981), Judge Getzendanner held that if the accused officer is not liable, then his supervisor is not liable either. This is so even if a suspect custom, policy or practice of the municipality is demonstrated.

This Court subscribes to the *Spriggs* holding. Henry is not liable for false arrest or for the use of excessive force. Accordingly, neither the Village, Aigner nor Hammond can be liable for Henry's lawful actions. Summary judgment is granted for the Village, Aigner and Hammond. Summary judgment also is granted in favor of public defendant Bierman for the additional reason that Bierman's duties as Village attorney do not include any responsibility over the Village's police force.

### D. *42 U.S.C. § 1985(3)*

Crawford and Young claim that the public defendants have violated their rights under 42 U.S.C. § 1985(3). That section prohibits persons from conspiring to deprive another person or class of persons of the equal protection or privileges and immunities of the law. In *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1797, 29 L.Ed.2d 338 (1971), the Supreme Court, however, held that not every tortious, conspiratorial interference with the rights of others is actionable. "To state a cognizable claim under section 1985(3) [a complaint must allege] ... some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798. *See also Lesser v. Braniff Airways, Inc.,* 518 F.2d

---

**6.** Thus, the Court need not decide whether a municipality is liable for mere negligent supervision, *see Monell v. New York City, supra,* at 691, 98 S.Ct. at 2036; whether a city's alleged failures must be directly linked to its agents' wrongful acts in order to incur liability, *see Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1975); whether damages are recovered only where the City is grossly negligent or deliberately indifferent to its agents' behavior, *see, e.g., Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); or,

whether the plaintiffs' failure to allege that Henry previously had been charged with violations under section 1983 renders implausible plaintiffs' claims that the Village failed to discipline Henry. *See, e.g., Herrara v. Valentine,* 653 F.2d 1220 (8th Cir.1980); *Hamrick v. Lewis,* 515 F.Supp. 983, 986 (N.D.Ill.1981). Similarly the Court need not decide under what conditions agents of a municipality may be held liable under § 1983, individually or representatively, for their inferiors' actions. *See, e.g., Wolf-Lillie v. Sonquist,* 699 F.2d 864 (7th Cir. 1983) and the cases cited at pp. 869–70.

538 (7th Cir.1973); *Brainerd v. Potratz,* 421 F.Supp. 836 (N.D.Ill.1976), *aff'd* 566 F.2d 1177 (7th Cir.1977).

The Seventh Circuit describes a protected class under section 1985(3) by immutable characteristics, such as race, ethnicity, sex or religion. *Murphy v. Mount Carmel High School,* 543 F.2d 1189 (7th Cir.1976). The *Mount Carmel* case held that a class of employees is not within section 1985(3) since its salient characteristic, being employed, is subject to ready change. *Id.; Bianco v. American Broadcasting Companies,* 470 F.Supp. 182 (N.D.Ill.1979).

■ Furthermore, a class for purposes of section 1985(3) cannot be composed of those who exercise rights of free speech or association or those who allege infringement of free speech or association rights. *Carchman v. Korman Corporation,* 456 F.Supp. 730, 739 (E.D.Pa.1978), *aff'd* 594 F.2d 354 (3d Cir.1979), *cert. denied,* 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1980). If such a class was permitted, the limiting goal of *Breckenridge* would be gutted. *See also Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir.1972) (proposed classes of criminal lawyers versus noncriminal lawyers not classes within § 1985(3)); *DeSantis v. Pacific Telephone and Telegraph Co., Inc.,* 608 F.2d 327 (9th Cir.1979) (proposed class of homosexual persons not a class protected by § 1985(3)); *Cain v. Archdiocese of Kansas City, Kansas,* 508 F.Supp. 1021 (D.Kansas 1981) (proposed class of handicapped persons not class within 1985(3)).

■ This Court finds that a class based on union membership, like the putative class of Mount Carmel High School employees, is not worthy of section 1985(3) protection. The finding is dicta, however, since Crawford and Young have not alleged that they belong to a class—protected by section 1985(3) or otherwise—or that any of the defendants conspired against them because of their membership in such a class. They cite neither their Union affiliation and associated expression of First Amendment freedoms nor their gender as the basis for the alleged conspiratorial discrimination against them. Plaintiffs' section 1985(3) allegations widely miss the mark and are dismissed for failure to state a claim upon which relief may be granted.

### E. *Moats' Complaint*

■ Finally, the complaint brought by Moats also is dismissed for failure to state any claim. Moats, the first named plaintiff in this matter, is the president of the Union to which Crawford and Young belong. Although there are no specific allegations made by Moats in any count, apparently it was his intention to join Crawford and Young in their allegations against all of the private and public defendants. The allegations of wrongful arrest and excessive force in Counts III and IV, however, are personal to Crawford and Young and do not effect Moats' rights individually or in his capacity as a representative of the Union. He cannot maintain wrongful arrest or excessive force actions against any of the defendants. Nor has Moats stated a claim cognizable under section 1985(3), since he too has not alleged a class-based discriminatory conspiracy.

\* \* \*

Accordingly, an order is entered

(1) Granting summary judgment on Counts III and IV in favor of defendants Henry, the Village, Aigner, Bierman and Hammond on the issues of false arrest and excessive force.

(2) The allegation of conspiracy in violation of 42 U.S.C. § 1985(3) is dismissed with prejudice for failure to state a claim for which relief can be granted.

(3) This cause is dismissed in its entirety.

IT IS SO ORDERED.