U.S. 153, 194, 98 S.Ct. 2279, 2301–02, 57 L.Ed.2d 117 (1978).

**Cynthia SAVAGE, Plaintiff,**

v.

**DANE COUNTY, Compass Insurance and James Kennedy, Defendants.**

**No. 84–C–114–S.**

United States District Court,
W.D. Wisconsin.

June 12, 1984.

Rosemary J. Fox, Madison, Wis., for plaintiff.

Suzanne E. Williams, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court is a motion on behalf of all of the defendants for summary judgment in this action based on 42 U.S.C. § 1983. Plaintiff alleges that excessive force was used by defendant Kennedy in arresting her. Plaintiff also attempts to assess liability against defendant Dane County on the ground that it acted in reckless disregard of her rights by employing an officer with a known propensity for use of excessive force.

### MEMORANDUM

Defendant Kennedy argues that his actions cannot be held to constitute excessive

force. The facts leading up to plaintiff's arrest appear to be undisputed.

On the evening of December 24, 1982, Officer Kennedy, a deputy in the Dane County Sheriff's Department, responded to a domestic dispute call at plaintiff's residence. He ascertained that plaintiff and her ex-husband, Thomas Savage, had been having an argument. The children had taken refuge in the home of a neighbor. He was told by plaintiff, however, that Thomas was not there. After being joined by another deputy and by a municipal officer, and after observing the residence for a short time from across the street, the officers ascertained that Thomas was at the residence and that there was an outstanding warrant for his arrest. After being admitted to the residence by plaintiff's father, the officers were again told by the plaintiff that Thomas was not there. Plaintiff was on the phone at the time. Thomas was found in the living room, and the two deputies attempted to arrest Thomas. He resisted being handcuffed.

At this point, the facts become disputed. Plaintiff asserts that she touched Officer Kennedy on the shoulder with the intention of inquiring as to the reason for the arrest. Kennedy reacted violently to this intrusion. Despite the fact that plaintiff was retreating, Officer Kennedy threw her to the floor, placed his knee in her back, and broke her arm as he handcuffed her. She was thereafter dragged from the house, where her head was "bashed" against the police car before she was placed inside. She was then transported to the hospital for treatment of her arm. This version of the event is supported by the affidavits of the plaintiff and her father.

Officer Kennedy's version, supported by his affidavit and the reports of the other officers present, is substantially at odds with that of the plaintiff. According to

Kennedy, he was attacked from behind by the plaintiff, who was shouting obscenities at him. She violently pulled his hair and continued to struggle while he handcuffed her and placed her in the squad car.

Plaintiff was charged with obstructing an officer and battery to a police officer. She was convicted of the obstruction charge, a misdemeanor, and acquitted of the felony battery charge.

Defendant argues that the Court can accept the fact that plaintiff pulled his hair because plaintiff only denies that she deliberately did so, rather than flatly denying that she pulled his hair. The Court does not believe that a summary judgment motion is the proper method for resolving such a dispute and, at any rate, is not convinced that a determination of whether plaintiff pulled Kennedy's hair is absolutely essential to the issue presented to the Court. It can be assumed, based on plaintiff's conviction, that probable cause for arrest existed. The question is whether the amount of force used to effectuate the arrest was excessive. That determination depends upon the circumstances present at the time of the arrest.

By accepting the version of the material facts offered by the plaintiff, because Rule 56 requires all inferences to be taken in favor of the non-movant, the Court is unable to conclude as a matter of law that plaintiff's constitutional rights were not violated. Even if the issue is judged by a "shocking to the conscience" standard, as argued by defendant under the authority of *Alberts v. City of New York*, 549 F.Supp. 227 (S.D.N.Y.1982),[1] the Court could not grant summary judgment. Plaintiff has painted a perhaps unrealistic picture [2] of the event as a brutal police attack on a perfectly passive victim. Of course, if a less stringent standard were applicable (*see generally*, 60 A.L.R. Federal 204 (1982))

---

**1.** This standard has been applied in this Circuit as well. *See Moats v. Village of Schaumburg*, 562 F.Supp. 624 (N.D.Ill.1983).

**2.** This picture is doubtful in view of her conviction for obstructing an officer. However, the Court cannot accept defendant's argument that

the conviction allows an inference that the force used to subdue the plaintiff was justified. Her actions presumably justified an arrest and the force necessary to accomplish it. That does not mean that the force used by defendant was not excessive. That question is open.

the argument against granting summary judgment would be even stronger.

■ Accordingly, summary judgment cannot be granted to defendant Kennedy because of the existence of disputed facts.

Dane County argues that it should be granted summary judgment because the undisputed facts fall short of supporting the standard for municipal liability. Plaintiff appears to rest its case against Dane County on the ground that the County was aware of previous instances of Kennedy's use of excessive force. The facts, as they appear from the records of the Sheriff's Department, are as follows:

On October 28, 1979, defendant Kennedy assisted in breaking up a fight in a tavern while he was off duty. According to the complainant, several patrons of the bar broke up a fight between the complainant and another individual. After the complainant was pulled from the other individual, Kennedy allegedly hit him with a closed fist, jarring a couple of teeth loose. The Department investigated the matter by interviewing eight people who witnessed the incident, including Kennedy and the complainant. Kennedy's story was that he struck the complainant in order to end the struggle of the complainant, who was resisting ejection from the bar. This version was largely supported by the bartender. Another witness stated that the blow from Kennedy was in response to an obscenity directed at Kennedy by the complainant. The owner of the bar stated that the complainant and the person with whom he fought were intoxicated at the time and that he often had trouble with them. Other witnesses' statements cannot be read to support either version of the incident. The complainant did not follow up with his threat to prefer charges against Kennedy.

On March 29, 1981, while on patrol, Kennedy observed a tavern in operation after hours. According to his report, he entered the tavern, warned the bartender to close, and left. Shortly after leaving, he apparently realized that he had left his flashlight in the tavern, and returned to retrieve it. The bar was closed, but the wife of the owner was inside. He asked her to look for the flashlight and, as he attempted to follow her inside, the bar owner approached him and belligerently told him he could not enter. Kennedy returned to his car to make sure the flashlight was not there, and then returned to the steps leading into the tavern. The owner met him there and, as Kennedy tried to enter, the owner fell off the steps. Kennedy entered, followed by the owner, who had apparently cut his hand when he fell. The Department investigated the incident the next morning by interviewing the owner and his wife. The owner stated that Kennedy had approached him in the parking lot about the missing flashlight and, when told that the establishment was closed, Kennedy threw him across the parking lot into the street. He admitted that he may have had "one too many." His wife, who did not witness the altercation, stated that Kennedy entered the premises followed by her injured husband and inquired about his flashlight, which she could not find. She described Kennedy as courteous. Kennedy offered to take her husband to the hospital. The owner filed a claim for damages with the county. The record does not disclose the disposition of this complaint except for a note which states that: "This case is very similar to the other alleged battery complaints but apparently it cannot be sustained."

On the evening of January 19, 1981, the Department received a call from a complainant who stated that she had witnessed two deputies "severely beat" an arrestee within the City of Madison. She stated that she wished to file a complaint because they had used excessive force. According to the reports filed by the officers involved, Officer Payne had stopped a vehicle driven by a person believed to be intoxicated. He requested back-up, which was provided by Kennedy. The driver failed field sobriety tests and, when he was placed under arrest, he violently resisted being handcuffed. He first attempted to strike Payne. In attempting to subdue him, Kennedy received a face laceration; the other officer a finger laceration. The driver was

hit a number of times with a flashlight, including once in the face. The driver remained violent through a trip to the hospital, and was still uncooperative at the police station, where the office personnel were unable to complete booking procedures. The complainant was contacted by phone and by letter during the next week and did not respond.

On July 1, 1981, Kennedy responded to a complaint about fireworks. He responded to the complainant's address and was told that their neighbors had frequently been using fireworks and that they thought the person responsible at that time was the boyfriend of the neighbors' daughter. He then went to the neighbors' home to investigate. Kennedy was confronted by the owner of the house, who denied using fireworks. According to Kennedy's report, this person became verbally abusive and continued his abuse as Kennedy warned him not to use fireworks. Kennedy started to leave, but the man became threatening and, when Kennedy again approached him, the man entered the house and procured a shotgun which he pointed at Kennedy. When told to put the gun away, the man did so, but continued his verbal abuse. Kennedy returned to the home of the family who had complained of fireworks and warned them to stay clear of their neighbor because he might become violent. As he began to drive away, the two families began to yell at each other. Kennedy called for a back-up and returned. The subject continued his verbal abuse and threatened violence, whereupon Kennedy placed him under arrest. An attempt to handcuff the subject became a protracted struggle lasting some eight minutes, during which time Kennedy injured his arm. He believed it was broken, although it was only sprained. During this struggle, a number of people appeared to be attempting to obstruct the arrest by grabbing at Kennedy. He continually brushed them aside. After finally getting the subject into the car, assistance arrived. He transported the subject to the police station, stopping once to take off the handcuffs when the subject had calmed down and complained of pain. This incident was investigated by interviewing, apparently, everyone who was involved. The neighbors who had filed the firecracker complaint were supportive of the officer, stating that he had been attacked by the subject, and stated that other neighbors who entered into the fray verbally and physically abused the officer. These other neighbors stated that they had arrived to assist the officer, having heard his call for assistance, but that the officer was abusive toward them and treated the subject of the arrest brutally by kicking him. The statement of the subject of the arrest the next day (corroborated by his wife) was that he initially misunderstood that he was the subject of the fireworks complaint and was upset that the officer was charging him with the offense. He admitted becoming verbally abusive and that he had "lost his head." He complained of no significant injuries, stated that the officer had not kicked him and was not brutal in any way except that his arms were not limber enough to be handcuffed behind his back so that the officer's attempt to handcuff him was painful. The wife stated that she had attempted to pull the officer off her husband, but that the officer struck out at her and knocked her to the ground. They stated at the interview that the officer was just doing his job and that they had not been hurt. Some months later, a claim was filed for damages from the County on account of this incident by the wife of the subject arrested, claiming that she had been injured when pushed. The resolution of this claim is not of record.

Kennedy's performance evaluations have noted possible abuse of sick leave on two occasions. In addition, a report signed on May 13, 1981 notes that he needed improvement in attitude, with the comment: "Still receiving citizen complaints of over-reaction and/or excessive force." The evaluation instructs the officer that he should improve his performance in this regard: "Use better tact or control your temper."

■ Municipal liability for the constitutional torts of its employees may not be based on a theory of *respondeat superior,* but must be based on a custom or policy of the municipality which caused the tort. *Monell v. New York City Dept. of Social*

*Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is now clear that the level of inaction necessary for the imposition of liability on the basis of a municipal custom or policy must amount to reckless indifference to the rights of those injured by municipal employees. *Lenard v. Argento,* 699 F.2d 874, 885–86 (7th Cir.1983). In that case, the Court upheld a jury verdict by application of a standard of recklessness or deliberate indifference, relying on *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1975); *Owens v. Haas,* 601 F.2d 1242 (2d Cir.1979), cert. denied, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); and *Turpin v. Mailet,* 619 F.2d 196 (2d Cir.1980). *See also Starstead v. City of Superior,* 533 F.Supp. 1365 (W.D.Wis.1982) (inaction must amount to "tacit authorization" of the offensive acts, at 1371).

 Against this standard, the above facts are grossly insufficient to support liability. Rather than showing "tacit authorization" of offensive acts, or reckless disregard for the rights of injured parties, the County's practice of investigating complaints of this type appears to be thorough and sympathetic. Unless the Constitution requires that an officer be fired if complaints against him are received (a policy which would no doubt be violative of the officer's due process rights), the County's procedures for handling these complaints cannot be significantly criticized. Perhaps a set of findings by a responsible official that the specific complaint is unfounded, or something similar, would be helpful to clarify the resolution of each case.

Not only does the record belie any inference of recklessness by virtue of the extent of the County's investigation, but the record appears to show that an exoneration of the officer in each instance was justified. In the fireworks incident, the arrestee substantially agreed with the officer's version which, in turn, supports no inference of excessive force. The other three incidents involved arrests of people under the influence of alcohol. One of these inflicted wounds on both officers who arrested him. The other two incidents are arguably less clear in supporting exoneration of Kennedy, but also are not clearly indicative of a situation where an officer should be taken from the street.

Finally, the fact that Kennedy received a comment on his evaluation regarding the receipt of citizen complaints about his use of excessive force and was told to exercise more tact and control of his temper is indicative of concern rather than recklessness on the part of the County. It would be a rare officer who was never accused of using excessive force when he is faced with dealing with people under the circumstances enumerated above. A measure of tact and self control can often avoid the kind of confrontations that grow into excessive force complaints. By pointing this out to the officer, the superiors of the officer should not be fearful of incurring liability. At the same time, just because the officer could have handled a situation in such a way that confrontation could have been avoided does not mean that he is guilty of using excessive force. Even if the officer is somehow guilty of provoking a confrontation by lack of tact, he is still privileged to use whatever force necessary to quell the confrontation. Officer Kennedy's evaluation must be read as a criticism of his technique in dealing with people, not as knowledge or authorization of use of excessive force.

Accordingly, the motion for summary judgment on behalf of the County must be granted. The Court understands that defendant Compass Insurance is representative of Officer Kennedy, not the County. Therefore, only the County will be granted summary judgment.

The motion for summary judgment also seeks dismissal of the plaintiff's pendent State claim for infliction of emotional distress on the ground that the notice of claim filed by the plaintiff was not timely. The parties did not brief this issue, and the Court understands that plaintiff wishes to show, after discovery, that the County had that actual notice. The motion in this respect is denied without prejudice.

### ORDER

IT IS ORDERED that the defendants' motion for summary judgment is GRANT-

ED with respect to the liability of the County under 42 U.S.C. § 1983, and is, in all other respects, DENIED.