Ronnie **RICE** and **Christopher Samson,** Plaintiffs,

v.

James **BURKS** and **Mark Harvey,** Defendants.

No. 88 C 6068.

United States District Court, N.D. Illinois, E.D.

May 28, 1992.

---

Robert S. Harlib, Lobin & Soren, Ltd., Chicago, Ill., for plaintiffs.

Douglas McMillan, Sharon Baldwin, Phillip Snelling, Judson H. Miner, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiffs, Ronnie Rice and Christopher Samson, filed a four-count complaint in the Circuit Court of Cook County, Illinois. Defendants, James Burks and Mark Harvey, filed a timely notice of removal, bringing the case to this court. 28 U.S.C. §§ 1441(a), (b); 1446(a), (b). See also 28 U.S.C. §§ 1331, 1343; 42 U.S.C. § 1983. Defendants have moved for summary judgment on all claims in this case.

Plaintiff Ronnie Rice contends in Count I that:

5. On or about December 18, 1986, plaintiffs were walking in the parking lot at or near 7700 South Vincennes Avenue in the City of Chicago, County of Cook and State of Illinois.

6. At all times relevant hereto, plaintiffs, and each of them, acted in a peaceable, non-threatening and lawful manner.

7. While plaintiffs were walking in the aforesaid lot, defendants, without just and probable cause, illegally searched and seized plaintiffs, physically assaulted and beat plaintiffs, falsely imprisoned plaintiffs by handcuffing them and placed them under arrest.

8. As a direct and proximate result of the assault, battery, illegal seizure, false imprisonment and false arrest as stated hereinabove and committed by defendants in violation of 42 U.S.C. § 1983, plaintiff, RONNIE RICE, was subjected to deprivation of his rights, privileges and immunities secured by the Constitution and the laws of the United States, sustained deprivation of his personal liberty, invasion of his privacy and violations of his civil rights, and has suffered and will continue to suffer from physical injury, humiliation, embarrassment and fear, all to his damage.

In Count II, plaintiff Rice realleges the paragraphs of Count I, adding:

9. The actions of the defendants, as stated hereinabove, were committed in an intentional, willful, wanton and malicious manner.

Plaintiff Christopher Samson's allegations in Count III are identical to plaintiff Rice's in Count I except for paragraph 8, in which plaintiff Samson alleges:

8. As a direct and proximate result of the assault, battery, illegal seizure, false imprisonment and false arrest as stated hereinabove and committed by defendants in violation of 42 U.S.C. § 1983, plaintiff, CHRISTOPHER SAMSON, was subjected to deprivation of his rights, privileges and immunities secured by the Constitution and the laws of the United States, sustained deprivation of his personal liberty and violations of his civil rights, and has suffered and will continue to suffer from physical injury, humiliation, embarrassment and fear, all to his damage.

In Count IV, plaintiff Samson realleges paragraphs 1 through 8 of Count III, adding:

9. The actions of the defendants, as stated hereinabove, were committed in an intentional, willful, wanton and malicious manner.

It appears from these allegations that plaintiffs are alleging only Section 1983 claims, and not any state law claims.

Defendants, out of an understandable caution, argue in their memorandum in support of their motion for summary judgment that they are entitled to summary judgment on any pendent state claims plaintiffs may have alleged. Plaintiffs in their memorandum in response to the motion for summary judgment address only defendants' arguments with respect to the Section 1983 claims, confirming that the complaint only alleges Section 1983 claims.

Essentially, each plaintiff makes two claims; that he was arrested and searched without probable cause, and that excessive force was used in arresting him. These claims will be discussed in order.

█ With respect to the claim of a lack of probable cause, the following facts are undisputed:

14. A Marcus Bell told the officers that he observed Rice and Samson under the hood of his automobile and that his battery and graphic equalizer were missing....

A reading of the depositions from which this fact was taken shows that the officers were told this prior to their arrest and search of plaintiffs. This was certainly sufficient to give the officers probable cause to arrest plaintiffs for theft. Therefore, summary judgment will be granted in favor of defendants on the claims of plaintiffs that they were illegally arrested and searched.

With respect to the claims of plaintiffs that defendants used excessive force in arresting them, the facts are somewhat different for each plaintiff. Those facts will be set forth before the contentions of defendants are examined.

The undisputed facts are:

9. Harvey and Burks announced that Rice and Samson were under arrest.

. . . . .

10. Rice was handcuffed and "laid lightly" face down on the ground ...

11. While Rice was lying face down, Samson struggled with the officers. Samson was told to put his hands behind his back, but did not....

12. While all officers were attempting to handcuff Samson, Rice got to his feet and "trotted" away....

13. Rice claims that he felt something "touch his back" and he fell forward, striking his chin on the ground....

In addition to these undisputed facts, plaintiffs contend that there is evidence supporting the following facts, which also should be considered in ruling on the motion for summary judgment:

24. SAMSON was struck numerous times with a baton which resulted in visible bruises....

25. SAMSON's physical injuries made him unable to work for a week....

Defendants claim that they are qualifiedly immune on these claims.

█ The Seventh Circuit, in discussing that court's jurisdiction over an interlocutory appeal purportedly on qualified immunity grounds, explained qualified immunity as follows:

The defense of qualified immunity articulated in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and amplified in *Anderson v.*

*Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), gives public officials the benefit of legal doubts. An official who does not violate law "clearly established" at the time, 457 U.S. at 818, 102 S.Ct. at 2738, is entitled not only to prevail, but to prevail before trial. Qualified immunity, we know from *Mitchell [v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)], establishes a right not to be tried. When rules of law clearly establish public officials' duty, the immunity defense is unavailable. So, too, the interlocutory appeal to vindicate the right not to be tried is unavailable when there is no legal uncertainty; there is not separate "right not to be tried" on the question whether the defendants did the deeds alleged; that is *precisely* the question for trial.

*Elliott v. Thomas,* 937 F.2d 338, 341 (7th Cir.1991) (emphasis in original). With respect to whether law is clearly established, the Seventh Circuit has said:

> In examining this argument, we examine whether the right [defendant] allegedly violated was "clearly established in a particularized sense." .... This does not mean that [defendant] prevails "unless the very action in question ha[d] been previously held unlawful." .... Rather, it means that qualified immunity is inappropriate if, in light of the law in effect ... [at the time of the defendant's complained of actions], a reasonable officer would have known that the particular action at issue ... was unlawful.

*Juriss v. McGowan,* 957 F.2d 345, 350 (7th Cir.1992). There is initially a question of what law was clearly established about the use of excessive force at the time of this arrest in the early morning hours of December 19, 1986.

Defendants in their memorandum in support of their motion for summary judgment base their arguments upon the Fourth Amendment standard articulated in *Lester v. City of Chicago,* 830 F.2d 706 (7th Cir. 1987). In their reply memorandum, defendants shift their ground and argue based upon the Fourteenth Amendment standard set forth in *Gumz v. Morrissette,* 772 F.2d 1395 (7th Cir.1985). Their apparent claim

that they were merely using the *Lester* case defensively is unconvincing; *Lester* is discussed and *Gumz* not even mentioned in defendants' supporting memorandum. It is only in their reply memorandum that *Gumz* becomes the centerpiece of defendants' contentions as to the state of the law at the time of the arrest. That is too late, particularly where, as here, plaintiffs were never given an opportunity to respond to defendants' new argument. FRCP 56(c); *Edwards v. Honeywell, Inc.,* 960 F.2d 673 (7th Cir.1992) (non-moving party must be given at least 10 days, or at least 13 days if served by mail, to respond to new arguments not contained in the original motion for summary judgment after the arguments are first raised in a supplemental memorandum on a motion for summary judgment).

Fortunately, the new argument made in defendants' reply memorandum would not have made any difference in the standard applied by this court. Defendants wish to have the *Gumz* standard considered as the law established at the time of the arrest at bar; or at the very least as demonstrating that the objective reasonableness standard was not clearly established at that time. Defendants argue that because *Gumz* had been decided prior to the date of the arrest at bar and the decision in *Lester* overruling *Gumz* was still in the future, the former case is relevant to what law was clearly established on that date and the latter case is not. This is true; but it does not mean what defendants would have it mean, that whether defendants violated clearly established law with respect to the amount of force used to arrest plaintiffs is to be judged solely by the standard applied in *Gumz.*

Defendants' argument ignores that *Gumz* by its own terms was decided only on Fourteenth Amendment grounds. Indeed, the *Gumz* court explicitly stated:

> The Supreme Court's willingness to address an excessive force claim under the Fourth Amendment in *Tennessee v. Garner,* 471 U.S. [1], 105 S.Ct. 1694, 85 L.Ed.2d 1 [(1985)], clearly indicates the propriety of a Fourth Amendment analy-

sis of such claims. Since no substantive due process was before the Court in *Garner*, that decision does not invalidate a Fourteenth Amendment analysis of excessive force claims, and only that Amendment is before us.

*Gumz v. Morrissette*, 772 F.2d 1395, 1399–1400 n. 3 (7th Cir.1985). See *Lester v. City of Chicago*, 830 F.2d 706, 709–10 (7th Cir. 1987). No reasonable police officer could have had any uncertainty from this that he or she was still required to comply with the Fourth Amendment, or else act contrary to the law. Also, in explaining *Gumz* the Seventh Circuit has stated:

> Moreover, *Gumz* had limited the circumstances under which persons could recover damages, which is distinct from defining unlawful conduct.... No reasonable police officer would have thought that *Gumz* condoned cuffing a suspect in the ear (the act Elliott says punctured his eardrum).

*Elliott v. Thomas*, 937 F.2d 338, 343 (7th Cir.1991). But see *Chathas v. Smith*, 884 F.2d 980, 988–89 (7th Cir.1989).

In overruling *Gumz, Lester* did not announce any new Fourth Amendment standards that were not clearly established while *Gumz* was still good law. *Lester* did not change any standard applicable to Fourth Amendment claims and, as noted previously, *Gumz* itself recognized that Fourth Amendment principles were applicable in judging the amount of force used to effect an arrest if a Fourth Amendment claim alleging the use of excessive force in effecting an arrest was brought. *Gumz v. Morrissette*, 772 F.2d 1395, 1399–1400 n. 3 (7th Cir.1985). See *Lester v. City of Chicago*, 830 F.2d 706, 709–10 (7th Cir.1987). What *Lester*'s overruling of *Gumz* did was change the law with respect to the applicability of Fourteenth Amendment substantive due process principles to that same situation; under *Gumz* excessive force claims could be analyzed under either a Fourteenth Amendment substantive due process standard or a Fourth Amendment standard, whereas under *Lester* only the Fourth Amendment standard may be utilized in such cases. *Gumz v. Morrissette*, 772 F.2d 1395, 1399–1400 n. 3 (7th Cir.

1985). See *Lester v. City of Chicago*, 830 F.2d 706, 710 (7th Cir.1987).

Thus, the *Gumz* case does not set forth law which could have provided a reasonable officer with a basis for determining the limits of lawful conduct and *Lester* made no change in the standards applicable to Fourth Amendment excessive force claims. The new argument improperly made in defendants' reply memorandum then would not have made a difference in the decision of their motion for summary judgment even if that argument had been timely made.

At the time of the arrest at bar, it was clearly established that the Fourth Amendment was applicable to the amount of force a police officer could lawfully use in effecting an arrest. See *Gumz v. Morrissette*, 772 F.2d 1395, 1399–1400 n. 3 (7th Cir. 1985). In the case cited in *Gumz* for the proposition that a Fourth Amendment claim could be made for the use of excessive force in effecting an arrest, the United States Supreme Court stated that:

> To determine the constitutionality of a seizure "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." ... We have described "the balancing of competing interests" as "the key principle of the Fourth Amendment." .... Because one of the factors is the extent of the intrusion, it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out....

*Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). The balance in a particular case depends upon "whether the totality of the circumstances justifie[s] a particular sort of ... seizure." *Tennessee v. Garner*, 471 U.S. 1, 9–10, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1 (1985); *Lester v. City of Chicago*, 830 F.2d 706, 711 (7th Cir.1987).

As to plaintiff Rice, defendants argue in their memorandum in support of the motion for summary judgment:

In this case, Rice admitted that he knew that he was under arrest, handcuffed and told to lie face down on the ground. In spite of this, he chose to get up and run away in an effort to escape arrest. Whether he fell on his own or was pushed is not really relevant. What is relevant is that Rice did not have a clearly established constitutional right to run away after being arrested and not have an officer touch him in his back while attempting to recapture him.

In their reply memorandum, defendants argue:

With regard to the excessive force claim of Ronnie Rice (Rice), it must fail. First, it is uncontested that Rice was handcuffed, told he was under arrest, to lay face down on the ground and to remain still. Rice admitted that he got up on his feet and trotted away. Rice has failed to cite "clearly established law" which states that an arrestee who is trying to escape by running away has the right to not have an officer recapture him by reaching out and "touching" his back.... The lack of seriousness of the crime is not the issue. Additionally, defendants move to strike the portion of plaintiffs' memorandum which refers to Rice being "shoved" to the ground. Rice in his deposition stated he felt something touch his back.

The motion to strike a portion of plaintiffs' memorandum is denied. Defendants argue based upon a lack of citation to authority that the very action in question had previously been held unlawful. As previously noted, this is not the standard applicable to a qualified immunity defense. See *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir. 1992). At the time of the arrest, it was clearly established that the amount of force used to effect an arrest must be objectively reasonable to be lawful.

■ The portions of the memoranda of defendants, and the fact stated as uncontested, concerning the amount of force used on plaintiff Rice are misleadingly incomplete. Defendants state as an uncontested fact from plaintiff Rice's deposition, and utilize in their memoranda as fact, that "Rice claims that he felt something 'touch his back' and he fell forward, striking his chin on the ground." Plaintiff Rice in fact testified at his deposition as follows:

Q. After you trotted these nine to ten yards, what happened next?

A. Well, I felt something just—I don't know what it was, something that hit my back or something. I felt something touch my back.

Q. Was it a hand?

A. It could have been.

Q. Was it a gun?

A. It could have been, I don't know my back was turned.

Q. Was it hard or was it soft?

A. I can't remember.

Q. After this something hit your back, what did you do?

A. I fell towards the ground.

....

Q. When you say you fell toward the ground, did you land on the ground?

A. Yes.

Q. What landed on the ground?

A. My chin landed on the ground.

Q. Anything else?

A. That's all I can remember.

Q. Did your knees hit the ground?

A. Yes, they hit a few rocks on the ground.

Q. Did any other part of your body strike the ground?

A. I can't remember.

Q. When something hit you in the back, were you standing still or were you still trotting.

A. I was still trotting.

Q. After you hit your chin and knees on the ground, what happened next?

A. From that point until I came to the wagon, I can't remember anything until I got to the wagon.

Q. Do you know what hit you on the back?

A. No.

From this it can be seen that defendants' selective use of by plaintiff Rice's statement that he felt something touch his back gives the misleading impression that it is undisputed that only a very small amount

of force was used in arresting plaintiff Rice. In fact, the amount of force used in arresting plaintiff Rice is a matter which will require a factual determination, as is the question of whether use of that amount of force was objectively reasonable under the totality of the circumstances.

With respect to plaintiff Samson, defendants argue in their memorandum in support of the motion for summary judgment:

Samson's claim has the same analysis as Rice's. At the time of this incident, it was not clearly established law that a person who was told that he was "under arrest" had the right to refuse to place his hands behind his back when ordered to do so by a police officer. Defendants, under Illinois law, had the right and duty to effect the arrest of Samson. Samson admitted he was told he was under arrest, but refused to allow himself to be handcuffed by struggling and flailing his arms. If Samson has any injuries, it is his own fault. As stated earlier, the officers need not retreat from a person who is told that he is under arrest.

Again, defendants are asking the court to require citation to authority that the very action in question had previously been held unlawful; a specificity not required for plaintiff Samson's excessive force claim to survive this motion for summary judgment on qualified immunity grounds. The same sort of factual questions that remain with respect to plaintiff Rice's claim of excessive force remain with respect to plaintiff Samson's claim of excessive force; i.e., questions of how much force was used and whether that amount of force was reasonable under the totality of the circumstances.

Defendants further contend:

Samson's alleged injuries are sores and bruises which did not require any medical attention. *Moats v. Village of Schaumburg*, 562 F.Supp. 624, 630 (N.D.Ill.1983), held that the absence of proof of permanent or serious physical injury means no liability for a section 1983 claim. Here, Samson was not physically injured. Defendants are entitled to summary judgment on any excessive force claims.

These statements are not factually accurate. Plaintiffs stated as facts precluding summary judgment:

24. SAMSON was struck numerous times with a baton which resulted in visible bruises....

25. SAMSON'S physical injuries made him unable to work for a week....

The deposition excerpts cited by plaintiffs support these statements. There is evidence that plaintiff Samson suffered physical injuries; and the *Moats* case cited was decided under an inapplicable Fourteenth Amendment due process standard. See *Moats v. Village of Schaumburg*, 562 F.Supp. 624, 630 (N.D.Ill.1983); *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This argument of defendants is therefore without merit.

Defendants are not entitled to summary judgment on qualified immunity grounds or on the ground that plaintiff Samson did not suffer physical injuries on the excessive force claims of plaintiffs.

ORDERED: Defendants' motion for summary judgment is granted in part and denied in part.

The motion for summary judgment is granted with respect to the claims of plaintiffs concerning the legality of their arrests. The motion for summary judgment is denied with respect to the excessive force claims of both defendants.